# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **TIMOTHY ZOMNIR,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.  4:25-cv-172** |
| | § | |
| | § | |
| **JOSE ARROYO,** | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, Timothy Zomnir, complaining of Jose Arroyo, and for cause of action will respectfully show unto the Court as follows:

> "[T]he Due Process Clause protects a pretrial detainee from the use
> of excessive force that amounts to punishment."

*Kingsley v. Hendrickson*, 576 U.S. 389, 397, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015).

## SUMMARY

On February 24, 2023, inside of the Tarrant County Corrections Center, Booking Lieutenant Jose Arroyo slammed Mr. Zomnir's entire body against a wall and then slammed Mr. Zomnir's head against the wall. This occurred after Mr. Zomnir inquired about when he and his fellow inmates would be provided with food. When Arroyo slammed Mr. Zomnir's entire body up against a wall and then slammed Mr. Zomnir's head against the wall, Mr. Zomnir was not a danger to Arroyo or any other person as he was defenseless with his hands clearly visible and did not make any movements or make verbal comments to Arroyo indicating that he posed a potential threat to Arroyo or any other person. As a result of Arroyo's excessive use of force, Mr. Zomnir sustained a lump on his forehead and was diagnosed with two fractured ribs. Mr. Zomnir now files this lawsuit for violation of his right to be free from excessive force under the Fourteenth Amendment to the United States Constitution.

## I.
## PARTIES

1.      Plaintiff Timothy Zomnir is a resident of Tarrant County, Texas.

2.      At all times relevant to this lawsuit, Defendant Jose Arroyo was employed at the Tarrant County Sherriff's Office located at 100 N. Lamar Street, Fort Worth, Texas, 76196. Defendant Arroyo is a resident Tarrant County, Texas and can be served wherever he may be found. Defendant Arroyo is being sued in his individual capacity.

## II.
## JURISDICTION AND VENUE

3.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

4.      Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391 because the Defendant resides in the Northern District of Texas and all of the causes of action accrued in the Northern District of Texas.

### III.
### FACTS AND ALLEGATIONS

**Defendant Arryo's Prior History of Excessive Force and Lying to Coverup his Misconduct**

5.      On February 10, 2020, a lawsuit styled 4:20-cv-113-A was filed in the United States District Court Northern District of Texas by Antonio J. Foster against Arroyo and Tarrant County, Texas alleging that Arroyo hit an inmate in the face with a closed fist while the inmate was in hand restraints.

6.      In the lawsuit, Foster claimed Arroyo hitting him in the face with a closed fist was not done to restore discipline but was done with the intent to cause him physical harm.

7.      Foster alleged that Arryo <u>lied</u> in reporting that he had hit him with an open hand to subdue him.

8.      Foster also alleged that Tarrant County "allowed a common practice and policy to persist which is unconstitutional," and "guards were encouraged to use excessive force against pretrial detainees and are not properly and adequately trained how to handle inmates with mental health issues."

9.      Furthermore, Defendant Arroyo was terminated from his position as a peace officer on July 24, 2009, after an Internal Affairs investigation resulted in sustained findings of misconduct for violation of Tarrant County Civil Sheriff's Department's Civil Service Rules 12.02.03, Insubordination; 12.02.15, Violation of, or willful disregard of any lawful regulation or order made and given by a Department Supervisor.

10.     Specifically, Deputy Arroyo was involved in a vehicle pursuit and was advised by a supervisor to terminate the pursuit.

11.     Arroyo advised over the radio that he was terminating the pursuit, but it was later discovered via in-car video that Arroyo had continued the pursuit with overhead lights and no siren, which is a violation of Tarrant County Emergency Vehicle Operations.

12.     Additionally, video evidence showed that after being directed to terminate the pursuit, Arroyo drove the wrong way on a one-way highway service road.

13.     Below are Arroyo's termination records from the Tarrant County Sheriff's Department.



# TARRANT COUNTY
## DEE ANDERSON, SHERIFF

CHARLES A. ECKERT
CHIEF DEPUTY
817/884-2950
FAX: 817/884-3305

PLAZA BUILDING
200 TAYLOR STREET
SEVENTH FLOOR
FORT WORTH, TEXAS 76102-2084

Deputy Jose A. Arroyo (**PID# 234039**) was terminated July 24th, 2009 after an Internal Affairs investigation resulted in sustained findings of misconduct for violation of Tarrant County Civil Sheriff's Department Civil Service Rules 12.02.03, *Insubordination*; 12.02.15, *Violation of, or willful disregard of any lawful regulation or order made and given by a Department Supervisor* said rules noted below. Deputy Arroyo was involved in a vehicle pursuit and was advised by a supervisor to terminate the pursuit. Deputy Arroyo advised over the radio that he was terminating the pursuit. It was later discovered on in-car video that Deputy Arroyo had continued the pursuit with overhead lights and no siren, which is a violation of Tarrant County Emergency Vehicle Operations. Additionally, video evidence showed that after being directed to terminate the pursuit, Deputy Arroyo drove the wrong way on a one way highway service road.

**12.02   IMPROPER CONDUCT DEFINED.** *Improper conduct includes any of the below-listed reasons and shall be grounds for disciplinary action. Just cause exists when one or more of the listed types of improper conduct have been documented by incident or evaluation reports or other supporting data.*

02.   *Insubordination*

15.   *Violation of, or willful disregard of any lawful regulation or order made and given by a Department Supervisor,*

*Specifically:*

*Patrol S.O.P. 604.65 Emergency Vehicle Operations (C) (3) (c)*

> *Both the siren and warning lights must be operating while the vehicle is being operated in an emergency manner*

*Patrol S.O.P. 604.66 Pursuit (F)*

> *(1) Prohibitions (f)*
> *Pursuing offenders by driving the wrong way on a street*



# TARRANT COUNTY

### OFFICE OF THE
### SHERIFF

**DEE ANDERSON**
SHERIFF
817/884-3098
FAX: 817/212-6987

PLAZA BUILDING
200 TAYLOR STREET
SEVENTH FLOOR
FORT WORTH, TEXAS 76102-2084

July 24, 2009

TO:         Deputy Jose Arroyo

FROM:       Sheriff Dee Anderson

SUBJECT: **Termination** (09-119)

After due consideration, and having reviewed your response to the intended disciplinary
action, I have found no information that would justify a change in the Disciplinary
Board's recommendation. Therefore, your employment with the Tarrant County Sheriff's
Office shall **be terminated effective 1700 hours, Friday, July 24, 2009.**

You have the right to appeal this decision in accordance with Chapter 12 of the Sheriff's
Civil Service Rules.

Sheriff Dee Anderson

_____        07-24-09        1645
(Received by)                 (Date)        (Time)

COMMITTED TO THE IMPROVEMENT OF THE QUALITY OF LIFE THROUGH SERVICE TO THE COMMUNITY

14.     On September 25, 2009, an agreement was entered in by the Tarrant County Sheriff's Department and Arroyo that he would return to work for the department in the position of Jailer upon final approval of the agreement by the Tarrant County Sheriff's Department Civil Service Commission; Arroyo agreed to dismiss his appeal and to make no further contest of this discipline before the Commission or in any judicial forum; the Department agreed to not carry Arroyo's peace officer license; for purposes of bids for days off and shifts, Arroyo began working with the same seniority rights as an entry level new jailer, and Arroyo was placed in a non-weapons certified jailer position beginning October 8, 2009, and would not be entitled to any back pay.

15.     Below is a screen capture of the Agreed Motion to Dismiss Appeal entered into by Tarrant County Sheriff's Department and Defendant Arroyo.

CASE NO. 909-07

IN THE MATTER OF

JOSE ARROYO

§ BEFORE THE TARRANT COUNTY
§ SHERIFF'S DEPARTMENT
§ CIVIL SERVICE COMMISSION,
§ TARRANT COUNTY, TEXAS

## AGREED MOTION TO DISMISS APPEAL

Comes now, the TARRANT COUNTY SHERIFF'S DEPARTMENT ("Department"),

by and through its attorneys of record, David K. Hudson and Steve Sparks, and JOSE

ARROYO ("Appellant"), by and through his attorney of record, David Sloane, and file their

Agreed Motion to Dismiss Appeal and in support thereof, show the following:

### I.
### STATEMENT OF FACTS

This appeal is set for hearing on Monday, October 5, 2009.

On September 25, 2009, an agreement was entered into by all parties and attorneys

of record. Thereafter, all parties agreed to the following terms and conditions:

1. The Department agrees to allow Appellant to return to work for the Department in the position of a Grade 51, Jailer, upon final approval of this agreement by the Tarrant County Sheriff's Department Civil Service Commission;

2. Appellant agrees to dismiss his appeal and to make no further contest of his discipline before the Commission or in any judicial forum;

3. The Department will not carry Appellant's peace officer license;

4. For purposes of bids for days off and shifts, Appellant will begin with the same seniority rights as an entry level new jailer; and

5. Appellant will be placed in a non-weapons certified Jailer position beginning October 6, 2009 and will not be entitled to any backpay.

AGREED MOTION TO DISMISS APPEAL - PAGE 1

16.    Below is Arroyo's Report of Separation from the Tarrant County Sheriff's Department which states he was terminated for less than good standing for a rule violation.

**LAST DATE EMPLOYED** *(MM/DD/YYYY):*    **7/24/2009**

**SELECT AN ACTION** (enter check in a box)
*Action requires a reason code*

| ☐ Termination in Good Standing (Eligible for accrual pay-off) | ☑ Termination Less Than Good Standing (Ineligible for accrual pay-off) | ☐ Retirement (County Retirement Plan) |
|---|---|---|

**ACTIONS (IT0000)**

**REASON CODE** (enter check in a box):

**Termination in Good Standing**

☐ Involuntary - Expiration of Temporary Employment
☐ Involuntary - Expiration of Leave
☐ Involuntary - Expiration of County Leave
☐ Involuntary - Failed Medical/Physical Requirements
☐ Involuntary - Lay Off
☐ Involuntary - Military Leave
☐ Voluntary - Accepted A Better Position
☐ Voluntary - Coworker Relationships
☐ Voluntary - Inadequate Salary
☐ Voluntary - Lack of Opportunity
☐ Voluntary - Leaving Fort Worth
☐ Voluntary - Personal Health
☐ Voluntary - Personal Reasons
☐ Voluntary - Returning to School
☐ Voluntary - Supervisor Relationship
☐ Voluntary - Temporary Job
☐ Voluntary - Work Dissatisfaction
☐ Voluntary - Work Schedule
☐ Death of Employee
☐ Death of Employee on Duty

**Termination Less Than Good Standing**

☐ Involuntary - Expiration of Leave
☐ Involuntary - Expiration of County Leave
☐ Involuntary - Job Performance
☐ Involuntary - Misconduct
☐ Involuntary - Not Passing Probation
☑ Involuntary - Rule Violation
☐ Voluntary - Left Job No Notice
☐ No Show

**Retirement**

☐ Retiree

**ORGANIZATIONAL ASSIGNMENT (IT0001)** *employee relationship to entire County organization*

| | |
|---|---|
| Position Number | 20001586 |
| Title | Deputy Sheriff |
| Personnel Area | 2500 |
| Fund | 10000-2009 |
| Employee Group | Employee |
| Employee Subgroup | LE Hourly |
| Immediate Superior | |
| Remarks | |

Appointing Authority/Designee                    Date 7/21/2009

17.    Shockingly, despite the Tarrant County Sheriff's Department being aware of Arroyo's history of lying to cover up his misconduct resulting in Arroyo's termination from the position of peace officer with Tarrant County Sheriff's Department on July 24, 2009, the Tarrant County Sherriff's Department agreed to hire Arroyo to return to work in the position of a jailer.

**Defendant Arryo's Assault on Mr. Zomnir in the Tarrant County Corrections Center**

18.    At all times relevant to this lawsuit, Defendant Officer Jose Arroyo was employed at the Tarrant County Sheriff's Office as a Booking Lieutenant.

19.    At all times relevant to this lawsuit, Plaintiff Timothy Zomnir was a pretrial detainee in the Tarrant County Corrections Center.

20.    On February 24, 2023, Mr. Zomnir was transported to the Tarrant County Corrections Center.

21.    Upon arrival at the Corrections Center, Mr. Zomnir inquired about when he and his fellow inmates would be provided with food.

22.    In response, Defendant Arroyo suddenly slammed Mr. Zomnir's entire body against a wall.

23.    Arroyo then slammed Mr. Zomnir's head against a wall.

24.    At no point prior to Defendant Arroyo slamming Mr. Zomnir's entire body against the wall did Mr. Zomnir attempt to flee or take steps away from Defendant Arroyo as Mr. Zomnir was standing stationary and defenseless with his hands clearly visible when he inquired when he and his fellow inmates would be provided with food.

25.    At no point prior to Defendant Arroyo slamming Mr. Zomnir's entire body against the wall did Mr. Zomnir push or actively resist Defendant Arroyo as Mr. Zomnir was standing stationary and defenseless with his hands clearly visible when he inquired when he and his fellow inmates would be provided with food.

26.    At no point prior to Defendant Arroyo slamming Mr. Zomnir's head against the wall did Mr. Zomnir attempt to flee or take steps away from Defendant Arroyo as Mr. Zomnir was standing stationary and defenseless with his hands clearly visible and not holding a weapon.

27.    At no point prior to Defendant Arroyo slamming Mr. Zomnir's head against the wall did Mr. Zomnir push or actively resist Defendant Arroyo as Mr. Zomnir was standing stationary and defenseless with his hands clearly visible and not holding a weapon.

28.    At no point did Mr. Zomnir posture his body in a threatening manner.

29.    At no point did Mr. Zomnir strike Defendant Arroyo or any other officer in any way.

30.    When Defendant Arroyo slammed Mr. Zomnir's entire body against a wall and slammed Mr. Zomnir's head against the wall, Mr. Zomnir was not a danger to Defendant Arroyo or any other person as he was standing stationary and defenseless with his hands clearly visible, not holding a weapon, and he did not make threatening statements or attempt in any way to harm Defendant Arroyo or any other jailers.

31.    In an effort to cover up his excessive use of force, Defendant Arroyo lied and claimed the following during an internal affairs investigation: "while walking into the facility one of the inmates involved began asking for food the Inmate was later identified as Timothy Zomnir CID #0723164. I informed Inmate Zomnir that it was early, and he would not receive any food to pass out until about 11 o'clock. This apparently angered Inmate Zomnir because he began demanding food and making threats, I do not remember the verbiage. I also approached him and informed him he was not going to walk into this facility making threats and demands. Inmate Zomnir aggressively raised his right hand with what I believed to be his closed fist. I immediately grabbed his hand for fear of him striking me and I placed him against the wall. I lost control of his hand as he pulled away and he used it to push himself from the wall and turn toward me. I used both my hands against his upper body in an attempt to keep him against the wall and turn him away from me, inadvertently striking him on the right of the back of his head…"

32.     However, at no point did Mr. Zomnir make any threatening statements or attempt in any way to harm Defendant Arroyo or any other jailers.

33.     At no point did Mr. Zomnir aggressively raised his right hand or posture his body by pushing away or turning towards Defendant Arroyo or any other officer in any way in a threatening manner.

34.     Officer J. Moxley described the encounter between Mr. Zomnir and Defendant Arroyo as the following: "while wating for the door to open at Search in, Inmate Zomnir began arguing and having a verbal altercation with Lt. Arroyo. Something occurred during the verbal altercation that caused Lt. Arroyo to place Inmate Zomnir against the wall. Inmate Zomnir resisted Lt. Arroyo's attempt to keep him against the wall."

35.     Notably, at no point does Officer Moxley state that Mr. Zomnir aggressively raised his right hand or postured his body by pushing away or turning towards Defendant Arroyo or any other officer in any way in a threatening manner prior to Defendant Zomnir slamming Mr. Zomnir's entire body against a wall and slamming his head against a wall.

36.      As a result of Defendant Arroyo's use of force, Mr. Zomnir suffered injuries including a lump on his forehead and two fractured ribs.

37.     These injuries were not caused by any other means.

38.     Defendant Arroyo was at all times acting under the color of law.

## IV.
## CAUSES OF ACTION

**Count One**
**Excessive Force**
**Violation of the Fourteenth Amendment Pursuant to 42 U.S.C. § 1983**
**Against Defendant Arroyo**

39.     Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

40.     Acting under the color of law, Defendant Arroyo deprived Mr. Zomnir of the rights and privileges secured to him by the Fourteenth Amendment to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force.

41.     Plaintiff brings this cause of action pursuant to 42 U.S.C. § 1983.

42.     "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 397, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015).

43.     A pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable in order to demonstrate that it was excessive in violation of the Fourteenth Amendment's Due Process Clause. *Id.*

44.     The following factors bear on the reasonableness inquiry: (1) the relationship between the need for the use of force and the amount of force used;  (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Id.*

   **1.  Relationship Between the Need for the Use of Force and Amount of Force Used**

45.     Mr. Zomnir had not engaged in any physical resistance before Defendant Arroyo slammed Mr. Zomnir's entire body against a wall and slammed his head against a wall.

46.     Defendant Arroyo slammed Mr. Zomnir's entire body against a wall and slammed his head against a wall despite Mr. Zomnir being defenseless with his hands clearly visible and not holding a weapon.

47.     At no point prior to Defendant Arroyo slamming Mr. Zomnir's entire body against a wall and slamming his head against a wall did Mr. Zomnir attempt to flee or take steps away from Defendant Arroyo.

48.     At no point prior to Defendant Arroyo slamming Mr. Zomnir's entire body against a wall and slamming his head against a wall did Mr. Zomnir push or actively resist Defendant Arroyo.

49.     At no point did Mr. Zomnir posture his body in a threatening manner.

50.     At no point did Mr. Zomnir strike Defendant Arroyo or any other officer in any way.

51.     At no point did Mr. Zomnir verbally threaten Defendant Arroyo or any other officer.

52.     When Defendant Arroyo slammed Mr. Zomnir's entire body against a wall and slammed his head against a wall, Mr. Zomnir was not a danger to Defendant Arroyo or any other person since he was standing stationary and defenseless with his hands clearly visible, not holding a weapon, and he did not make threatening statements or attempt in any way to harm Defendant Arroyo or any other jailers.

53.     Here, there was no justification for Defendant Arroyo's use of force as Defendant Arroyo did not face an "immediate threat of harm" when Mr. Zomnir had simply inquired about

when he and his fellow inmates would be provided with food, was defenseless with his hands clearly visible not holding a weapon, and he did not make threatening statements or attempt in any way to harm Defendant Arroyo or any other jailers  prior to Defendant Arroyo brutally slamming Mr. Zomnir's entire body against a wall and slamming his head against a wall.

### 2. The Extent of Mr. Zomnir's Injuries

54.    As a result of Defendant Arroyo's use of force, Mr. Zomnir suffered injuries including a lump on his forehead and two fractured ribs.

55.    These injuries were not caused by any other means.

### 3. Effort made by Arroyo to temper or to limit the amount of force used

56.    There were no efforts made by Defendant Arroyo to temper or limit the use of force as Defendant Arroyo immediately slammed Mr. Zomnir's entire body against a wall and then slammed his head against a wall when Mr. Zomnir had simply inquired about when he and his fellow inmates would be provided with food, was defenseless with his hands clearly visible not holding a weapon, and he did not make threatening statements or attempt in any way to harm Defendant Arroyo or any other jailers.

### 4. Severity of the security problem at issue

57.    There was no security problem reasonably perceived by Defendant Arroyo as at the time Defendant Arroyo slammed Mr. Zomnir's entire body against a wall and slammed his head against a wall as Mr. Zomnir had simply inquired about when he and his fellow inmates would be provided with food, was defenseless with his hands clearly visible not holding a weapon, and he did not make threatening statements or attempt in any way to harm Defendant Arroyo or any other jailers.

58.    At no point prior to Defendant Arroyo slamming Mr. Zomnir's entire body against a wall and slamming his head against a wall did Mr. Zomnir attempt to flee or take steps away from Defendant Arroyo.

59.    At no point prior to Defendant Arroyo slamming Mr. Zomnir's entire body against a wall did Mr. Zomnir push or actively resist Defendant Arroyo.

60.    At no point did Mr. Zomnir posture his body in a threatening manner.

61.    At no point did Mr. Zomnir strike Defendant Arroyo or any other officer in any way.

62.    When Defendant Arroyo slammed Mr. Zomnir's entire body against a wall and slammed his head against a wall, Mr. Zomnir was not a danger to Defendant Arroyo or any other person as he was standing stationary and defenseless with his hands clearly visible, not holding a weapon, and he did not make threatening statements or attempt in any way to harm Defendant Arroyo or any other jailers.

63.    There was no degree of force necessary to maintain or restore discipline as Mr. Zomnir was standing stationary and defenseless with his hands clearly visible, not holding a weapon, and he did not make threatening statements or attempt in any way to harm Defendant Arroyo or any other jailers.

64.    As such, the amount of force used by Defendant Arroyo against Mr. Zomnir as described above, specifically but not limited to, when Defendant Arroyo slammed Mr. Zomnir's entire body against a wall and then slammed his head against a wall while Plaintiff standing stationary and defenseless with his hands clearly visible, not holding a weapon, and he did not make threatening statements or attempt in any way to harm Defendant Arroyo or any other jailers,

was done for the purpose of punishment only, was done not to maintain order in the jail, and inflicted unnecessary injury, pain, and suffering upon Mr. Zomnir. *Kingsley*, 576 U.S. at 397.

65.     A reasonable officer would know that the use of force is clearly excessive when engaging with pre-trial detainees like Mr. Zomnir who was non-threatening, unarmed, not attempting to flee, with his hands visible not carrying a weapon, and completely defenseless.

66.     A reasonable officer would know that the use of force is clearly unreasonable when engaging with pre-trial detainees such as Mr. Zomnir was, non-threatening, unarmed, not attempting to flee, with his hands visible not carrying a weapon, and completely defenseless.

67.     There was no legitimate penological or governmental purpose for the Defendant slamming Mr. Zomnir's entire body against a wall and slamming his head against a wall thus this was excessive use of force in violation of Mr. Zomnir's Fourteenth Amendment rights as a pre-trial detainee.

### 5.   The level threat reasonably perceived by Defendant  Arroyo

68.     There was no threat reasonably perceived by Defendant Arroyo as at the time Defendant Arroyo slammed Mr. Zomnir's entire body against a wall and slammed his head against a wall as Mr. Zomnir was stationary and defenseless with his hands clearly visible, not holding a weapon, and he did not make threatening statements or attempt in any way to harm Defendant Arroyo or any other jailers.

### 6.   Whether Mr. Zomnir Was Actively Resisting

69.     Mr. Zomnir was not resisting at the time Defendant Arroyo slammed Mr. Zomnir against a wall and slammed his head against a wall as he was non-threatening, unarmed, not attempting to flee, with his hands visible not carrying a weapon, and completely defenseless.

70.     As such, because Mr. Zomnir did not resist, this factor favors Mr. Zomnir.

## V.
## PUNITIVE DAMAGES

71.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

72.    When viewed objectively from the standpoint of Defendant Arroyo, at the time of the occurrence, Defendant's conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

73.    As a direct, proximate, and producing cause and the intentional, egregious, malicious conduct by Defendant Arroyo, which was recklessly or callously indifferent to Plaintiff's protected rights, Plaintiff is entitled to recover punitive damages in an amount within the jurisdictional limits of this Court.

## VI.
## DAMAGES

74.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

75.    Plaintiff's injuries were a foreseeable event. Those injuries were directly and proximately caused by Defendant Arroyo's excessive and unreasonable use of force against Plaintiff, as described in this lawsuit.

76.    As a result, Mr. Zomnir is entitled to recover all actual damages allowed by law. Plaintiff contends said Defendant's conduct constitutes malice, evil intent, or reckless or callous indifference to his legally protected rights. Thus, Plaintiff is entitled to punitive damages against Defendant Arroyo.

77.    As a direct and proximate result of the occurrence which made the basis of this lawsuit, Mr. Zomnir was forced to suffer:

    a.  Physical injuries;

    b.  Mental anguish;

    c.  Physical pain and suffering.

78.     Pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiff seeks to recover, and hereby requests the award of punitive damages, reasonable attorney's fees, and costs of court.

## VII.
## ATTORNEY'S FEES

79.     If Plaintiff prevails in this action on claims pursuant to 42 U.S.C. § 1983, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

## VIII.
## JURY REQUEST

80.     Plaintiff respectfully requests a jury trial.

## IX.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendant, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

*/s/ Scott H. Palmer*
SCOTT H. PALMER,
Texas Bar No. 00797196

*/s/ James P. Roberts*
JAMES P. ROBERTS,
Texas Bar No. 24105721

*/s/ Breanta Boss*
BREANTA BOSS,
Texas Bar No. 24115768

**PALMER PERLSTEIN**
15455 Dallas Parkway,
Suite 540, LB 32
Addison, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
scott@palmerperlstein.com
james@palmerperlstein.com
breanta@palmerperlstein.com

**COUNSEL FOR PLAINTIFF**