**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| TIMOTHY ZOMNIR | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  4:25-CV-00172-O |
| | § | |
| JOSE ARROYO | § | |
| | § | |
| Defendant. | § | |

<u>**MEMORANDUM OPINION & ORDER**</u>

Before the Court are Defendant's Motion to Dismiss (ECF No. 9), Plaintiff's Response (ECF No. 10), and Defendant's Reply (ECF No. 11). Having reviewed the briefing and applicable law, the Court determines that the Motion should be **DENIED**.

## I.    BACKGROUND[1]

On February 24, 2023, inside of the Tarrant County Corrections Center, Defendant Lieutenant Jose Arroyo slammed Plaintiff Timothy Zomnir's body and head against a wall. Plaintiff sustained a lump on his forehead and was diagnosed with two fractured ribs.

While on the transport van to Tarrant County Corrections Center, Plaintiff and another inmate on the van were fighting.[2] Upon arrival at the Corrections Center, Plaintiff asked Defendant when he and his fellow inmates would be provided with food. Plaintiff was a model prisoner once he get off the van; he did not attempt to flee, was not aggressive, did not resist, and was defenseless with his hands clearly visible and not holding a weapon. Nonetheless, Defendant slammed Plaintiff's body and head against a wall.

---

[1] The Court's recitation of the facts is taken from Plaintiff's Complaint. *See* Compl., ECF No. 1. At the 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to the Plaintiff. *See Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).
[2] Def.'s Mot. Dismiss, Ex. A. (Def.'s Report) 1, ECF No. 9-1.

Plaintiff brings a § 1983 claim against Defendant in his individual capacities for excessive force in violation of the Fourteenth Amendment. Defendant moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) on the basis of qualified immunity.[3]

## II.    LEGAL STANDARDS

### A.  Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Rule "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy this standard, the defendant may file a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). A court may not accept legal conclusions as true, but when well-pleaded factual allegations are present, a court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.* at 678–79. A court ruling on a motion to dismiss "may rely on the complaint, its proper attachments, documents incorporated into the complaint by

---

[3] Def.'s Mot. Dismiss, ECF No. 9.

reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal quotation marks and citation omitted).

### B. Qualified Immunity

The doctrine of qualified immunity protects government officials sued under 42 U.S.C. § 1983 "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* This doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Deciding whether an official is entitled to qualified immunity requires a court to apply the two-pronged analysis established in *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first prong of the *Saucier* analysis asks whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right. *Id.* at 201. The second prong asks whether that right was clearly established at the time of the government official's alleged misconduct. *Id.* "The *sine qua non* of the clearly-established inquiry is 'fair warning.'" *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

"To surmount [the qualified immunity] barrier at the motion to dismiss stage, the plaintiff[] must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm alleged and that defeat a qualified immunity defense with equal specificity." *Torns v. City of Jackson*, 622 Fed. App'x 414, 416 (5th Cir. 2015) (citation

modified). Once an officer "raises the defense of qualified immunity, the plaintiff bears the burden of showing the defense does not apply." *Bryant v. Gillem*, 965 F.3d 387, 391 (5th Cir. 2020).

### C. Fourteenth Amendment Excessive Force

A pretrial detainee's constitutional rights arise from the Fourteenth Amendment's procedural and substantive due process guarantees. *Kitchen v. Dallas County*, 759 F.3d 468, 477 (5th Cir. 2014). To prevail on an excessive use of force claim as a pretrial detainee, a plaintiff must only show "the force purposefully and knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). Moreover, the Supreme Court identified six, nonexclusive factors that district courts may use to determine the reasonableness of the force used:

(1) the relationship between the need for the use of force and the amount of force used;

(2) the extent of the plaintiff's injury;

(3) any effort made by the officer to temper or to limit the amount of force;

(4) the severity of the security problem at issue;

(5) the threat reasonably perceived by the officer; and

(6) whether the plaintiff was actively resisting.

*Id.* at 397.

The standard is whether the defendant's actions were "rationally related to a legitimate nonpunitive governmental purpose" or were "excessive in relation to that purpose." *Id.* at 398. Objective reasonableness is determined under the facts and circumstances of each particular case and "from the perspective and with the knowledge of the defendant officer." *Id.* at 399.

## III.    PRELIMINARY ISSUE

Before reaching the merits of Defendant's Motion, the Court must address a preliminary issue. That is, whether the Court can consider Defendant and Officer Moxley's written statements to internal affairs. Defendant argues that the Court can consider the written statements.[4] Plaintiff argues the Court cannot.[5] The Court agrees with Defendant.

Generally, on a 12(b)(6) motion, the Court "must look only at the pleadings and accept all allegations in them as true." *St. Paul Ins. Co. of Bellaire, Tex. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991). However, the Court may consider documents outside the complaint when they are: (1) attached to the motion to dismiss; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). This is a "limited exception" to the general rule. *Scanlan v. Texas A&M University*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

Plaintiff's original complaint references *both* Defendant and Officer Moxley's written statements to internal affairs. Critically, Plaintiff quoted Officer Moxley's statement in his Motion to Dismiss.[6] And Plaintiff also quoted Defendant's statement at length.[7] Because Plaintiff quotes both statements, Defendant argues that the written statements are "central to the Plaintiff's claim[] because the Plaintiff referenced the statements in the pleadings, and it

---

[4] Def.'s Mot. Dismiss 5–7, ECF No. 9.
[5] Pl.'s Resp. 4–6, ECF No. 10.
[6] *See* Pl.'s Compl. ¶34, ECF No. 1 ("Officer J. Moxley described the encounter between Mr. Zomnir and Defendant Arroyo as the following: 'while waiting for the door to open at Search in, Inmate Zomnir began arguing and having a verbal altercation with Lt. Arroyo. Something occurred during the verbal altercation that caused Lt. Arroyo to place Inmate Zomnir against the wall. Inmate Zomnir resisted Lt. Arroyo's attempt to keep him against the wall.'")
[7] *See id.* ¶ 31 (arguing Defendant "lied" to "cover up his excessive use of force").

confirms that an incident occurred."[8] Plaintiff counters that "excerpts from the internal affairs investigation were incorporated into the Complaint, the incident report is 'merely evidence that Plaintiff need not rely on to prove his claims.'"[9] Further, Plaintiff's complaint "expressly rejects" portions of the reports.[10]

In *Pena v. City of Rio Grande City*, the Fifth Circuit dealt with a similar situation. 879 F.3d 613 (5th Cir. 2018). There, the plaintiff's "proposed complaint allege[d] that she was not suspected of any crime when she fled" but that "characterization [was] belied by the police reports." *Id.* at 620. The Fifth Circuit said, despite the conflicting police report, the plaintiff's "well-pleaded factual allegations enjoy a presumption of truth." *Id.* Because the plaintiff's complaint rejected elements of the police reports, the Fifth Circuit "presume[d] only that the officers made the assertions contained in the report, not that those assertions are in fact truthful." *Id.* at n.9. Following that approach, the Court will consider the officers statements to internal affairs, insofar as Plaintiff's complaint does not reject the assertions.

## IV.    ANALYSIS

### A.  Qualified Immunity: Constitutional Violation

Plaintiff brings a § 1983 claim against Defendant in his individual capacity for excessive force in violation of the Fourteenth Amendment. Plaintiff argues when applying the *Kingsley* factors, "there was no justification for the force used against" Plaintiff.[11] Defendant counters that when considering the statements made to internal affairs, Defendant's use of force was justified.[12] However, because Plaintiff explicitly rejects many of Defendant and Officer

---

[8] Def.'s Mot. Dismiss 6, ECF No. 9.
[9] Pl.'s Resp. 4, ECF No. 11 (quoting *Kaye v. Lone Star Fund V (U.S), L.P.*, 453 B.R. 655, 662 (N.D. Tex. 2011)).
[10] *Id.*
[11] *Id.* at 2.
[12] Def.'s Mot. Dismiss 7–10, ECF No. 9.

6

Moxley's statements, the Court agrees with Plaintiff. Applying the six *Kingsley* factors, Defendant's use of force was "objectively unreasonable." *Kingsley*, 576 U.S. at 396–97.

As to the first *Kingsley* factor, "the relationship between the need for the use of force and the amount of force used," this factor is neutral. *Id.* at 397. Officials are justified in using some degree of force in a good-faith effort to maintain or restore discipline where a prisoner refuses to cooperate with legitimate directives of an official. *See Gonzales v. Rowe*, 2020 WL 4811005, at *3 (N.D. Tex. July 27, 2020). Plaintiff pled that "he was standing stationary and defenseless with his hands clearly visible, not holding a weapon, and he did not make threatening statements or attempt in any way to harm Defendant [] or any other jailers."[13] However, Defendant's statement provides context that inmates were "actively fighting within the transport van" and Plaintiff does not specifically rebut this factual allegation.[14] Thus, when considering that added circumstance, Defendant's need to use force in order to maintain or restore discipline explains his conduct. The factor does not favor Defendant because, once off the transport van, Plaintiff was stationary and neither threatening Defendant nor posturing in a threating manner. Thus, the facts as pled by Plaintiff indicate that order was already restored, albeit only as it relates to Plaintiff.

As to the second *Kingsley* factor, "the extent of the plaintiff's injury," this favors Plaintiff. *Kingsley*, 576 at 397. As a result of Defendant's force, Plaintiff suffered a lump on his head and two broken ribs. While Defendant argues his use of force was necessary, accepting Plaintiff's facts as true, the extent of the injuries are severe for a compliant, nonaggressive inmate asking for food. Thus, this *Kingsley* factor favors Plaintiff.

As to the third *Kingsley* factor, "any effort made by the officer to temper or to limit the amount of force," Plaintiff does not plead any facts about whether Defendant attempted to

---

[13] Pl.'s Compl. ¶ 30, ECF No. 1.
[14] Def.'s Mot. Dismiss, Ex. A. (Def.'s Report) 1, ECF No. 9-1.

temper or limit the amount of force used. *Kingsley*, 576 at 397. However, Plaintiff does plead that Defendant "suddenly slam[ed] [Plaintiff's] entire body against a wall" and "then slammed [his] head against the wall."[15] Defendant argues that he attempted to deescalate the problems by telling Plaintiff that he would not enter the facility until Plaintiff stopped making threats and demands, but Plaintiff specifically pled that he was not making any threats. Giving Plaintiff's facts the presumption of truthfulness, the facts as pled do not indicate that Defendant attempted to temper the amount of force used. Accordingly, this factor favors Plaintiff.

As to the fourth *Kingsley* factor, "the severity of the security problem at issue," Defendant argues that he "had an obligation to respond forcefully to preserve order, the safety of others, and maintain institutional security" because of the inmate altercation that occurred in the transport van.[16] *Id.* The Court agrees. Other courts have recognized that "[s]ecurity in a jail setting can be fragile and even small chaotic events can snowball into larger disasters if unaddressed." *Reeves v. Franey*, 2021 WL 409737 at *4 (N.D. Tex Feb. 5, 2021) *appeal dismissed per curiam sub nom Reeves v. Carson*, 20-11007, 2021 WL 1345237 (5th Cir. 2021). Thus, given that Plaintiff does not rebut the fact that an altercation occurred in the van prior to arriving at the facility, this factor favors Defendant.

As to the fifth *Kingsley* factor, "the threat reasonably perceived by the officer" clearly favors Plaintiff. *Kingsley*, 576 at 397. Again, giving Plaintiff's facts the presumption of truthfulness required at this stage, Plaintiff was a stationary, nonthreatening, and compliant inmate. Thus, Defendant could not have reasonably perceived him to be a threat.

As to the sixth *Kingsley* factor, "whether the plaintiff was actively resisting," this factor favors Plaintiff. *Kingsley*, 576 at 397. Namely, Plaintiff specifically pled that he "was not

---

[15] Pl.'s Compl. ¶¶ 22–23, ECF No. 1.
[16] Def.'s Mot. Dismiss 9, ECF No. 9.

resisting at the time Defendant [] slammed [Plaintiff] against a wall and slammed his head against a wall."[17]

Applying this standard, the Court concludes that Defendant's conduct was "objectively unreasonable." *Id.* For the foregoing reasons, there was no justification for the force used against Plaintiff and thus a constitutional violation occurred. The Court must next consider whether the right was clearly established at the time to overcome Defendant's qualified immunity defense.

### B.  Qualified Immunity: Clearly Established Law

Having decided that Plaintiff sufficiently pleads a violation of a constitutional right, the Court must decide whether Plaintiff successfully alleges the right was clearly established at the time of the violation. *See Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (per curiam) (recognizing that it is the plaintiff's burden to "identify a case that put[s] [an officer] on notice that his specific conduct was unlawful"). Plaintiff does.

"[T]he Supreme Court has repeatedly instructed that clearly established law is *not* to be defined at a high level of generality. This is particularly true in recent years." *Tucker v. City of Shreveport*, 998 F.3d 165, 173 (5th Cir. 2021). In *Mullenix v. Luna*, the Supreme Court emphasized that "[t]he relevant inquiry is whether existing precedent placed the conclusion that [officers] acted unreasonably *in these circumstances* 'beyond debate.'" 577 U.S. 7, 13–14 (2015) (quoting *Ashcroft v. al–Kidd*, 563 U.S.731, 741(2011)) (emphasis added). There, the Court concluded that "[c]ases decided by the lower courts . . . have not clearly established that deadly force is inappropriate in response to conduct like [the suspect's]." *Id.* at 16. Finding no precedent that "squarely govern[ed]," the Court explained that "qualified immunity protects actions in the hazy border between excessive and acceptable force." *Id.* at 15, 18 (internal quotation marks and

---

[17] Pl.'s Compl. ¶ 69, ECF No. 1.

citation omitted). "Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Id.* at 12 (emphasis in original) (quoting *Saucier*, 533 U.S. at 205).

As discussed above, the relevant caselaw in this action are *Kinglsey* and cases that use the six factors for a pretrial detainee's excessive force claim. A panel of the Fifth Circuit has already clarified that "'violently slamming or striking' a non-resisting individual constitutes excessive force." *Acosta v. Williamson Cnty.*, No. 23-50777, 2024 WL 3833303 (5th Cir. Aug. 15, 2024) (quoting *Darden v. City of Fort Worth*, 880 F.3d 722, 733 (5th Cir. 2018)). According to Plaintiff's facts, which must be accepted as true, that is precisely what occurred here. Defendant slammed Plaintiff's body against a wall before slamming his head against the wall while Plaintiff was not resisting, not violent, and stationary. Thus, the right was clearly established at the time of the incident and Defendant is not entitled to qualified immunity.

## V.    CONCLUSION

For the foregoing reasons, the Court concludes that Defendant is not entitled to qualified immunity. Accordingly, the Court **DENIES** Defendant's Motions to Dismiss.

**SO ORDERED** on this **5th day** of **August, 2025**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**