**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **TIMOTHY ZOMNIR** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:25-CV-00172-O** |
| | § | |
| **JOSE ARROYO** | § | |
| | § | |
| **Defendant.** | § | |

**OPINION AND ORDER**

Before the Court are Defendant's Motion for Summary Judgment, Brief in Support, and Appendix in Support (ECF Nos. 31–33); Plaintiff's Response, Brief in Support, and Appendix in Support (ECF Nos. 34–36); and Defendant's Reply (ECF No. 39). Having considered the Motions, briefing, and applicable law, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 31). All other motions are **DENIED** as moot (ECF Nos. 42, 46).

## I. BACKGROUND[1]

The facts, unless otherwise noted, are undisputed. This case arises from an arrest after a traffic stop on February 24, 2023. Plaintiff Timothy Zomnir ("Zomnir") was arrested by the Saginaw, Texas Police Department for outstanding warrants.[2] Once detained, he was transported to the Police Department and then sent for booking at the Saginaw jail.[3] After being charged and

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiff's Complaint. *See* Pl.'s Compl., ECF No. 1; Pl. App. Resp. Mot. Summ. J. Ex. C (Video Surveillance of Tarrant County Jail), App. 44, ECF No. 36.
[2] Def.'s Mot. Summ. J. 5, ECF No. 31.
[3] *Id.*

arraigned, Zomnir was transferred by Saginaw officers to Tarrant County Correction Center (the "Jail").

That morning, at around 9:00 a.m., Zomnir and three other detainees were transported to the Jail. Of the four detainees in the van, Zomnir and two other detainees were handcuffed together.[4] A verbal and physical altercation ensued among the detainees while in the van.[5] Deputy Foster called Defendant Officer Jose Arroyo ("Arroyo"), a Booking Seargeant employed by the Tarrant County Sheriff's Department, for back up at the garage area in the Jail, known as the "sally port."[6] Arroyo and the surrounding officers were on alert for potential violence when the detainees arrived.[7]

While the detainees exited the van, Arroyo acknowledged there was no physical nor verbal violence among them, nor toward the officers.[8] Arroyo and one other officer led Zomnir and the two other detainees into the vestibule of the Jail. The vestibule is a small, enclosed room with two heavy-duty steel doors that inmates pass through before entering the Jail.[9] While in tight quarters, Arroyo and another officer directed the three inmates, who were handcuffed together, to face the wall.

Despite Arroyo's instructions to stand against the wall, Zomnir turned around and asked what time he was going to be given food. Arroyo stepped closer to Zomnir and once again directed Zomnir to face the wall. At that point, Zomnir raised his right arm. In a matter of seconds, Arroyo then grabbed Zomnir's arm and pushed him up against the wall as Zomnir resisted. At that point

---

[4] Def. App. Supp. Mot. Summ. J. Ex. B (Deposition of Timothy Zomnir), App. 36, ECF No. 33-2 (Zomnir was handcuffed to one other person directly, and that person was handcuffed to another person directly).
[5] Def. App. Supp. Mot. Summ. J. Ex. B (Deposition of Timothy Zomnir), App. 21, ECF No. 33-2.
[6] Def. App. Supp. Mot. Summ. J. Ex. B (Deposition of Timothy Zomnir), App. 24, ECF No. 33-2.
[7] Def. App. Supp. Mot. Summ. J. Ex. C (Decl. of Lieutenant Jose Arroyo), App. 2, ECF No. 33-3.
[8] *Id.* at 2–3.
[9] Pl. App. Resp. Mot. Summ. J. Ex. C (Video Surveillance of Tarrant County Jail), App. 44, ECF No. 36.

the other officer, Officer Justin Moxley, stepped in to help Arroyo subdue Zomnir. While attempting to control Zomnir's resistance, Arroyo forcefully pushed Zomnir up against the wall, causing him to suffer a concussion.[10]

On February 24, 2025, Zomnir brought this claim against Officer Arroyo in his individual capacity alleging excessive force in violation of his Fourteenth Amendment right under 42 U.S.C. § 1983. Arroyo now moves for summary judgment.

## II. LEGAL STANDARD

### A. Motion for Summary Judgment Standard

The Court may grant summary judgment when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks and citation omitted).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis for its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *Celotex*, 477 U.S. at 323. The Court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). And if there appears to be some support for disputed allegations, such that "reasonable

[10] Pl. App. Resp. Mot. Summ. J. Ex. D (JohnPeter Smith Hospital Medical Excerpt), App. 47, ECF No. 36.

minds could differ as to the import of the evidence," the Court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250.

"[W]hen there is video evidence available in the record, the [C]ourt is not bound to adopt the non-moving party's version of the facts if it is contradicted by the record, but rather should view the facts in the light depicted by the videotape." *Scott v. City of Mandeville*, 69 F.4th 249, 254 (5th Cir. 2023) (cleaned up). A "court should not discount the nonmoving party's story unless the video evidence provides so much clarity that a reasonable jury could not believe his account." *Darden v. City of Fort Worth*, 880 F.3d 722, 730 (5th Cir. 2018).

"The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "The opposing parties' failure to produce proof as to any essential element of a claim renders all other facts immaterial." *2223 Lombardy Warehouse, LLC v. Mount Vernon Fire Ins. Co.*, No. 3:17-CV-2795-D, 2019 WL 1583558, at *6 (N.D. Tex. Apr. 12, 2019) (Fitzwater, J.). Summary judgment is mandatory if the parties fail to meet this burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

**B. Fourteenth Amendment Excessive Force Standard**

A pretrial detainee's constitutional rights arise from the Fourteenth Amendment's procedural and substantive due process guarantees. *Kitchen v. Dallas County*, 759 F.3d 468, 477 (5th Cir. 2014). To prevail on an excessive use of force claim as a pretrial detainee, a plaintiff must only show "the force purposefully and knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). Moreover, the Supreme Court identified six, nonexclusive factors that district courts may use to determine the reasonableness of the force used:

(1) the relationship between the need for the use of force and the amount of force used;

(2) the extent of the plaintiff's injury;

(3) any effort made by the officer to temper or to limit the amount of force;

(4) the severity of the security problem at issue;

(5) the threat reasonably perceived by the officer; and

(6) whether the plaintiff was actively resisting.

*Id.* at 397.

The standard is whether the defendant's actions were "rationally related to a legitimate nonpunitive governmental purpose" or were "excessive in relation to that purpose." *Id.* at 398. Objective reasonableness is determined under the facts and circumstances of each particular case and "from the perspective and with the knowledge of the defendant officer." *Id.* at 399.

**C. Qualified Immunity**

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). To overcome an official's qualified immunity defense, a plaintiff must establish: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Although this does not mean that "a case directly on point" is required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741. The salient question is whether the state of the law gives the official "fair warning" that his or her conduct is unconstitutional. *See Hope v.*

*Pelzer*, 536 U.S. 730, 741 (2002). Courts have discretion in deciding which of the two prongs to address first. *Ashcroft*, 563 U.S. at 735. Here, the first prong is dispositive.

## III. ANALYSIS

### A. Qualified Immunity: Constitutional Vioaltion

To overcome an affirmative defense of qualified immunity, Plaintiff must first establish that Officer Arroyo violated his constitutional rights. Under a Fourteenth Amendment Due Process challenge, Courts apply the six *Kingsley* factors to determine whether the officer's force was objectively unreasonable as a matter of law. Here, Zomnir's excessive force claim fails because Arroyo's force was not "objectively unreasonable" applying the *Kingsley* factors. *Kingsley*, 576 U.S. at 369–97.

As to the first *Kingsley* factor, "the relationship between the need for the use of force and the amount of force used," evidence weighs in favor of Arroyo. *Id.* at 397. Officials are justified in using some degree of force in a good-faith effort to maintain or restore discipline where a prisoner refuses to cooperate with legitimate directives of an official. *See Gonzales v. Rowe*, 2020 WL 4811005, at *3 (N.D. Tex. July 27, 2020). So, the question this Court must ask is whether "the amount of force [was] proportional to the need for force?" *Fairchild v. Coryell Cnty., Texas*, 40 F.4th 359, 366 (5th Cir. 2022). Here, even before the incident in question, Arroyo and his partners were on alert that the inmates were engaged in some form of violence in the van before they arrived at the Jail.[11] Then, Zomnir refused to cooperate with Arroyo's instructions by failing to face the wall,[12] so pushing him up against the wall was necessary to restore discipline. Additionally, because Zomnir was handcuffed to two other inmates, all of whom were in tight quarters with two officers, force was vital to maintain order and diffuse further violence. Thus, Arroyo justifiably

---

[11] Def. App. Supp. Mot. Summ. J. Ex. C (Decl. of Lieutenant Jose Arroyo), App. 2, ECF No. 33-3.
[12] Pl. App. Resp. Mot. Summ. J. Ex. C (Video Surveillance of Tarrant County Jail), App. 44, ECF No. 36.

pressed Zomnir against the wall to de-escalate his unwillingness to comply, satisfying the first *Kingsley* factor. *Kingsley*, 576 U.S. at 397

The second *Kingsley* factor, "the extent of the plaintiff's injury," favors Defendant. *Kingsley*, 576 U.S. at 397. Zomnir alleges three distinct injuries: (1) a concussion, (2) two rib fractures, and (3) mental anguish and pain and suffering. The Supreme Court instructs this Court to evaluate "the nature of the force rather than the extent of the injury." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). First, as to the head injury, it is undisputed that Zomnir suffered from a concussion after the incident,[13] yet the force that caused the concussion was necessary to restore order and avert any violence. It is foreseeable that a plaintiff may suffer a concussion if he is pushed up against a wall because he is resisting the officer's instruction. Therefore, the nature of the injury is one which is reasonable given the facts outlined. Second, as to the rib injuries, the medical records do not support Zomnir's initial claim that two of his ribs were broken.[14] Viewing the evidence in the light most favorable to the nonmoving party, the results of X-rays demonstrated that Zomnir did not suffer any rib fractures after the incident.[15] Additionally, Zomnir does not offer evidence that he did in fact suffer a rib fracture. Finally, Zomnir alleged mental anguish being around law enforcement officers, however, during his deposition, Zomnir admitted that he no longer suffers from mental anguish when he is around officers and has not sought treatment or counseling for this.[16] Because Zomnir does not suffer from mental anguish nor does the evidence indicate that he needed or needs treatment for his mental distress, the Court concludes there is no

---

[13] Def. App. Supp. Mot. Summ. J. Ex. E (JPS Medical Records of Timothy Zomnir), App. 229, ECF No. 33-5.
[14] Def. App. Supp. Mot. Summ. J. Ex. F (Declaration of Umesh D. Oza, M.D.), App. 314–317, ECF No. 33-6.
[15] Def. App. Supp. Mot. Summ. J. Ex. B (Zomnir Deposition) App. 128, ECF No. 33-2.
[16] Def. App. Supp. Mot. Summ. J. Ex. E (JPS Medical Records of Timothy Zomnir), App. 186, 235, ECF No. 33-5.

genuine dispute of material fact as to whether Zomnir currently suffers from mental anguish. After evaluating each of Zomnir's alleged injuries, the third factor weighs in favor of Arroyo because a concussion is the type of injury that is foreseeable when actively resisting arrest. *Kingsley*, 576 U.S. at 397; *Wilkins*, 559 U.S. at 37.

As to the third *Kingsley* factor, "any effort made by the officer to temper or to limit the amount of force," favors Defendant. *Kingsley*, 576 at 397. Evidence indicates that Zomnir initially refused to comply with the order to stand against the wall. At this point, Arroyo did not slam Zomnir into the wall, rather, Arroyo stepped closer to Zomnir and once again ordered compliance. It was because Zomnir did not comply a *second* time and quickly raised his hand toward Arroyo that Arroyo decided that force was necessary to avert any further disobedience. When analyzing evidence as to the amount of force used by Arroyo, the Court concludes that Arroyo's use of force to subdue Zomnir was appropriate and, in fact, limited. Video evidence reveals that Zomnir continued to passively resist after the officer pushed him up against the wall.[17] Arroyo did not tase, punch, or strike Zomnir. Therefore, the third *Kingsley* factor weighs in Arroyo's favor.

As to the fourth *Kingsley* factor, "the severity of the security problem at issue," Defendant argues that he "had an obligation to respond forcefully to preserve order, the safety of others, and maintain institutional security" because of the inmate altercation that occurred in the transport van.[18] *Id.* The Court agrees. Other courts have recognized that "[s]ecurity in a jail setting can be fragile and even small chaotic events can snowball into larger disasters if unaddressed." *Reeves v. Franey*, 2021 WL 409737 at *4 (N.D. Tex Feb. 5, 2021) *appeal dismissed per curiam sub nom Reeves v. Carson*, 20-11007, 2021 WL 1345237 (5th Cir. 2021). Because Zomnir was chained to two other inmates who were in the van where the altercation occurred, a greater risk of unrest

---

[17] Pl. App. Resp. Mot. Summ. J. Ex. C (Video Surveillance of Tarrant County Jail), App. 44, ECF No. 36.
[18] Def.'s Mot. Dismiss 9, ECF No. 9.

existed if the situation escalated among the inmates. Thus, given that Plaintiff does not rebut the fact that an altercation occurred in the van prior to arriving at the facility, this factor favors Defendant.

As to the fifth *Kingsley* factor, "the threat reasonably perceived by the officer" favors Defendant. *Kingsley*, 576 at 397. After reviewing the video evidence, as allowed by the Fifth Circuit, Zomnir's noncompliance and forceful resistance indicate a reasonable belief in a threat to violence. The perception of the threat started when Arroyo was called for backup at the sally port, continued when Zomnir refused to comply with the officers' commands to face the wall, and was solidified when Zomnir quickly raised his hand toward the officer. Given the confined layout of the vestibule, and that there were two other inmates handcuffed alongside Zomnir, it was objectively reasonable for Arroyo to perceive a threat in that moment. Therefore, this factor weighs in favor of Defendant.

As to the sixth *Kingsley* factor, "whether the plaintiff was actively resisting," this factor favors Defendant. *Kingsley*, 576 at 397. Although, Plaintiff specifically alleges that he "was not resisting at the time Defendant [] slammed [Plaintiff] against a wall and slammed his head against a wall,"[19] video evidence demonstrates the contrary.[20] Even viewing the evidence in light most favorable to the nonmoving party, the video surveillance footage of the vestibule reveals that Zomnir was actively resisting Arroyo as Arroyo pushed him up against the wall. Once up against the wall, a second officer stepped in to help. It was while Zomnir was pressed up against the wall, but still resisting, that Arroyo grabbed Zomnir's hoodie to control his head and attempted to subdue Zomnir's resistance. While it is true that "[f]orce must be reduced once a suspect has been

[19] Pl.'s Compl. ¶ 69, ECF No. 1.
[20] Pl. App. Resp. Mot. Summ. J. Ex. C (Video Surveillance of Tarrant County Jail), App. 44, ECF No. 36.

subdued," here Zomnir did not cease resisting before his head was hit against the wall.[21] *See also Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 225 (5th Cir. 2020). Therefore, this factor weighs in favor of Defendant.

Applying this standard, the Court concludes that Defendant's conduct was not "objectively unreasonable." *Id.* For the foregoing reasons, Arroyo's force used against Plaintiff was justified and thus no constitutional violation occurred. Because no constitutional violation occurred, the Court need consider whether the right was clearly established at the time to overcome Defendant's qualified immunity defense.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Defendant is entitled to qualified immunity because no constitutional violation occurred. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment.

**SO ORDERED** on this **26th day** of **August 2026**.

Reed O'Connor
CHIEF UNITED STATES DISTRICT JUDGE

[21] *Id.*